## CHASE v. MONROE.

An officer has no legal right to sell on credit personal property attached or taken on execution, unless by the agreement of the parties or the direction of the creditor. If he does so, it is at his own risk against loss from the credit given.

If an officer, upon his own responsibility, sell property on credit and apply the full amount of the sales to the satisfaction of executions in his hands, in the order of the attachments, he is discharged from all further liability to the creditors by reason of any amount received for the sales.

Where an officer, without the direction of the creditors, made sales of property on credit, on some of which sales he received interest before the return day of the executions, and on others the purchasers proved insolvent—*held*, that the officer was bound to account to the creditors, on the executions, to the full amount of the sales, but not further.

CASE, against the defendant as sheriff of this county for the default of Joseph M. Rowell, one of his deputies. The third count in the plaintiff's declaration, on which only he claims to recover in this action, was as follows:

"And also for that the plaintiff, on the first day of September, A. D. 1845, at said Manchester, sued out of the office of the clerk of the court of common pleas of said county, his writ of attachment against Charles H. Chase, returnable to said court at its October term, 1845, and delivered said writ to the aforesaid Joseph M. Rowell, deputy, as aforesaid, of the defendant; and said Rowell, thereafter, as by said writ directed, attached, by virtue of said writ, the personal property of said Charles H. Chase, and before the return day of said writ sold said property, and held the proceeds of the same to answer any judgment which might be recovered by the plaintiff against said Charles H. Chase. And the plaintiff, by the consideration of the justices of said court, on the tenth day of November, A. D. 1849, recovered judgment against said Charles H. Chase for three hundred and twelve dollars and fifty cents, debt or damage, and twenty-eight dollars and twenty-eight cents, costs of suit; and on the twelfth day of November, 1849, sued out his writ of execution on said judgment against said Charles H. Chase, and

within thirty days from the date of said judgment, to wit, on the nineteenth day of November, A. D. 1849, delivered the same to said Rowell, and directed him to levy said execution upon the proceeds of the property of said Charles H. Chase, attached on the plaintiff's said writ as aforesaid, and as aforesaid, sold, and to apply the same in satisfaction of the plaintiff's said judgment and execution. Now the plaintiff avers that the proceeds of the said property, after satisfying the prior attachments thereon existing at the time the plaintiff delivered his said writ of execution to said Rowell, was three hundred and forty-one dollars, upon which the said Rowell ought to have levied the plaintiff's said writ of execution, and applied the same to the satisfaction of the plaintiff's said judgment and execution; but the said Rowell, neglecting his duty in that behalf, levied the plaintiff's said writ of execution upon two hundred and eight dollars and thirty-two cents, and no more, and applied the same in part satisfaction of the plaintiff's said judgment, and his own costs of levying, and returned said execution to said court satisfied only in part, to wit, to the amount of two hundred and five dollars and twenty-five cents; and wrongfully neglected and refused to levy said execution upon the balance of the aforesaid sum of three hundred and forty-one dollars, to wit, one hundred and thirty-two dollars and sixty-eight cents, and to apply the same in satisfaction of the plaintiff's said judgment and execution."

This action was commenced March 28, 1852. From the evidence offered on the trial it appeared that Rowell, as a deputy of the defendant, made an attachment of a stock of goods of one Charles H. Chase, on a writ in favor of this plaintiff against said Chase, subject to prior attachments made by said Rowell on other writs in favor of other parties against the same Chase.

Shortly after said attachments were made, Rowell, with the consent of all the attaching creditors, including this plaintiff, and of the debtor, made a sale of the property at-

tached, in due form, retaining the proceeds to be applied according to law on the judgments recovered. At the request of the debtor, the sale was made on a credit of thirty days.

The whole amount of the sales, less expenses, was $1006,87. As part of this amount Rowell took the note of S. J. Putney and others, dated November 24, 1845, for $383,57, in thirty days with interest, and the note of C. A. Brown of the same date for $94,34. Said notes were given to Rowell for those amounts of goods purchased by said Putney and Brown respectively, at the sale of the property attached as aforesaid.

Said note of Putney and others, was afterwards collected by Rowell in different payments—one November 10, 1849, of $122,50, one January 7, 1850, of $250,84, and the balance, $104,21, May 29, 1850—all amounting to $477,55. The note of Brown has not been paid, but still remains due.

The several attaching creditors recovered judgments against said C. H. Chase at the October term, 1849. That recovered by this plaintiff was for debt and costs, $340,78, and an execution was duly issued, and within thirty days delivered to said Rowell for levy and satisfaction out of the proceeds of the property attached and sold by him as aforesaid.

Rowell made his return on said execution, stating the sum remaining in his hands as proceeds of said property after satisfaction of the prior judgments to be $208,32, from which deducting costs of levy, $3,08, left the sum of $205,34, to be applied on the execution, and the same was returned satisfied for that amount only.

The whole amount of the prior judgments and costs of levy satisfied out of the proceeds of the property sold was $798,55, thus leaving $208,32, as balance of the first amount of the sales in the hands of Rowell, as returned on the execution. But, as before stated, he received in all on said note of Putney and others, $477,55; that is, $383,57 of principal, and $93,98 as interest. If this interest should be added to said amount of $208,32, it would make $302,30 as balance in

Rowell's hands.    But this sum includes the amount of said note of Brown for $94,34, which has never been collected. If that amount should be deducted from the sum of $302,30, it would leave $207,96 as the balance in Rowell's hands, and that was the balance of all money actually received for the goods sold and interest.

From other evidence it appeared that Brown, the maker of said note of $94,34, at the time of giving it, was in good credit, possessed of visible property from which it might have been collected by legal process, and so continued until the spring of 1848, when he suddenly became insolvent, and nothing has been or could be collected since.

Whereupon it was agreed by the parties that the questions arising upon the foregoing facts should be transferred to the superior court of judicature for determination ; such judgment to be rendered for the plaintiff or defendant as said court shall thereupon order.    And the same were transferred accordingly.

*Lull*, for the plaintiff.

*Foster* and *Sawyer*, for the defendant, contended as follows :

The case set forth in the declaration and upon which the plaintiff is to recover, if a recovery is to be had by him at all, is this, that the deputy of the defendant having, by consent of parties, sold property attached on the writ, had a balance of the proceeds in his hands to the amount of $341, on which he ought to have levied the plaintiff's execution, whereas he levied it on $208,32 only.

The plaintiff's execution was in the hands of the officer from some day within thirty days after the rendition of judgment at the October term, 1849, until the return day at the April term, 1850.    The last payment on the Putney note was of the $104,21, made on the 29th of May, 1850, after the return day of the execution.    The proceeds of the sale

Chase *v.* Monroe.

in the hands of the officer down to the return day, consisted, therefore, of cash including all the payments which had then been paid on the Putney note,...............$103,75
The unpaid note against Brown,................ 94,34
The unpaid balance of the principal of the Putney
  note, .................................... 10,23
And the unpaid interest which had accrued on the
  Putney note, if that interest is to be considered as
  proceeds of the sale, amounting at the return day
  to about,................................... 90,00
In behalf of the defendant it was contended that—

I.   There were no proceeds in the hands of the officer on which the plaintiff's execution could be levied, beyond the cash, $103,75.

II.   That if, however, the officer is to be considered as having the amount of sales in his hands, it can only be upon the ground that in making the sale upon credit he takes the risk of the securities, and the creditor has no interest in the question whether the property is sold for cash or on a credit, or whether sufficient securities are taken therefor or not; and if this view is sustained, then clearly the creditor can have no claim to any interest that may be agreed to be paid upon such securities.

III.   That if in taking securities the officer acts under his official responsibility so as to give the creditor a remedy against him for neglecting to take sufficient securities or for neglecting to collect the same in due time to be applied on his execution, then the officer is not to be held liable for the Brown note on the facts stated in the case under any form of action; certainly not under this.

EASTMAN, J.   The gist of the plaintiff's declaration is, that Rowell, the defendant's deputy, has not applied all the proceeds of the sale of the Chase goods to the satisfaction of the executions in his hands; that he has made only a partial application of the proceeds, and is liable for his de-

fault in not applying the whole. This is the only grievance which the declaration sets up, and, of course, is the only one for which a recovery can be had in this suit.

The goods were sold by Rowell on the writs, by the agreement of all the parties interested, the attaching creditors and the debtor, the proceeds to be applied according to law upon the judgments recovered. By the nineteenth section of chapter 195 of the Compiled Statutes, it is provided that "personal property attached shall be sold by the officer before judgment, if the parties consent thereto in writing; and such sale shall be made in the same manner as sales of property taken on execution, unless a different mode shall be agreed on by the parties." By the third section of chapter 207 of the Compiled Statutes, it is provided that sales of personal property on execution shall be upon notice, at auction, to the highest bidder. The statute further provides that the proceeds of property so sold upon writs shall be holden to pay the executions issuing in the actions in which the attachments were made, in the order in which they were made. Comp. Stat. ch. 195, § 36. And property attached and sold is deemed to remain in the custody of the officer, so far as to be liable to attachment, in the same manner it would have been if it had remained in his hands specifically. Comp. Stat. ch. 196, § 26.

From these several provisions it is quite apparent that an officer has no legal right to make sales upon credit, unless by the consent and agreement of the parties, or the order of the creditor. There is no provision of the statute that appears to contemplate any such practice. Property sold upon writs of attachment is to be disposed of in the same manner as upon execution; to wit, at auction; to the highest bidder; and, of course, for cash. And the officer is bound to account for the sum for which the sales are made. If the parties agree to a sale on credit, or if the creditor orders it, as is frequently done, and no doubt wisely, the sheriff will be protected; but without some such agreement or di-

rection, the officer is liable for the amount of the sales, to be applied in the order of the attachments. If he sells on credit, it is at his own risk.

Upon these principles the return of Rowell, the officer, was correct, and the defendant is not liable in this action. All the proceeds of the sales have been legally applied to the discharge of the executions in the order of the attachments. The whole amount of sales was $1006,87. Of this sum he applied $798,55 to the satisfaction of executions where prior attachments had been made, leaving a balance of $208,32 to be applied, and which was applied on the plaintiff's execution.

The officer sold on credit at the request of the debtor only; and the creditors, having given no directions, are not to suffer by any loss that may arise in consequence of such a sale. Whether the note of Brown be good or not will not affect their rights. Neither can they avail themselves of any advantages derived from such sale, other than those which arise from the sale itself. If the goods sold for more upon credit than they otherwise would, that is an advantage of which they cannot be deprived. But there is no other advantage that they can gain. The officer holds the goods or the money as the debtor's, until executions are recovered, and then they are applied in the order of the attachments—the goods, after being converted into money in case of no sale upon the writs, or the money, in case of sale before executions. And when the officer has applied the whole amount of the sales, he has discharged his duty, so far as the creditors are concerned, and is relieved from all further liability in the collection of the executions upon the property attached and sold.

In arriving at this conclusion the case of *Farley* v. *Monroe*, 1 Foster's Rep. 146, has not escaped our attention. In that case the action was brought by the administrator of the debtor for a balance in the sheriff's hands after satisfying the executions, and the court held that interest having been

received by the officer, he was trustee for the debtor for the amount. He held the property for the debtor, and was accountable to him in an action for money had and received, for whatever sum had come into his hands belonging to the debtor over and above the amount of the executions. The sheriff held the property and all its avails and its income, if any was received, for the debtor, and whatever was left after satisfying the executions belonged to him. But in this case, the action is brought by the creditor, and the duties of the officer in regard to him are particularly pointed out by statute. And if the officer accounts to the creditor for the full amount of the attachment, or for the amount of the sales made on the writs, it is all that the law requires him to do.

According to the provisions of the case, there must be,

*Judgment for the defendant.*